IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WICHITA CENTER FOR GRADUATE MEDICAL
EDUCATION, *ET AL.*,

          Plaintiff,

        vs.                  Case No. 16-1054-JTM

UNITED STATES OF AMERICA,

          Defendant.

MEMORANDUM AND ORDER

Resolving a long-standing disagreement with taxpayers, the IRS in 2010 agreed that medical students were not subject to FICA taxes. Following this determination, the IRS refunded prior FICA tax payments, including some $5.4 million in overpaid employer-portion FICA taxes to plaintiff Wichita Center for Graduate Medical Education (WCGME), from tax periods from 1997 to 2005.

The IRS and WCGME dispute the appropriate interest which plaintiff should receive for the overpayment. The IRS originally remitted $4.7 in interest to WCGME, but later determined that it had paid WCGME interest at an overly generous rate, and demanded repayment of $2.3 million in interest. WCGME repaid this amount, and filed the present action seeking its recovery.

WCGME and the IRS have essentially stipulated to all relevant facts, and both parties have moved for summary judgment. For the reasons provided herein, the court grants summary judgment in favor of the United States.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as

a matter of law.  Fed.R.Civ.P.  56(c).  In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party.  *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988).  The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.  *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985).  The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance.  *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs.  Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*).  One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A taxpayer is entitled to interest on overpayments at the rate established by 26 U.S.C. § 6621.  *See* 26 U.S.C. § 6611(a). Section 6621 sets forth the procedures for the determination of interest rates, with subsection (a) defining the different appropriate interest rates to be paid by the government (in the case of an overpayment), or for the taxpayer (in the case of underpayment).

    (1)  **Overpayment rate.**--The overpayment rate established under this section shall be the sum of–

        (A)  the Federal short-term rate determined under subsection (b), plus

        (B)  3 percentage points (2 percentage points in the case of a corporation).

        To the extent that an overpayment of tax by a corporation for any taxable period (as defined in subsection (c)(3), applied by substituting "overpayment" for "underpayment") exceeds $10,000, subparagraph (B) shall be applied by substituting "0.5 percentage point" for "2 percentage points".

    (2)  **Underpayment rate**.--The underpayment rate established under this section shall be the sum of–

        (A)  the Federal short-term rate determined under subsection (b), plus

        (B)  3 percentage points.

26 U.S.C. § 6621(a) (emphasized headings in original). The statute thus not only creates different interest rates for overpayments versus underpayments, it also provides for different rates as to individuals and corporations. Individuals receive interest at 3% over the Federal short-term rate, while corporations receive 2%. And if a corporation has overpaid by more than $10,000, it will receive only 0.5% interest.

      The stipulated facts establish that plaintiff WCGME is a non-stock, not-for-profit corporation organized under Kansas law, exempt from taxation under 26 U.S.C. §§ 501(a) and (c)(3). The present action rests on WCGME's contention that, as a nonprofit corporation, it should receive interest on its overpayment at the rate otherwise provided to individuals. WCGME advances an *in pari materia* construction of § 6621, under which "corporation" should be taken to mean only for-profit C corporations.

      The plaintiff's argument focuses on § 6621(c)(1), which provides for a special interest rate of the Federal short-term rate plus 5% in the case of "any large corporate underpayment." Under § 6621(c)(3), a large corporate underpayment "means any underpayment of a tax by a C corporation for any taxable period if the amount of such

underpayment for such period exceeds $100,000."

The court rejects the plaintiff's arguments, including the *in pari materia* argument grounded on subsection (c), and finds that subsection (a) unambiguously provides the governing interest rate for the plaintiff.

As a general matter, ordinarily a court will not resort to *in pari materia* where a statute is clear on its face. *See United States v. Warren*, 820 F.3d 406, 408 (11th Cir. 2016); ("courts generally apply *in pari materia* only when a legal text is ambiguous"); *Martin v. United States*, 389 F.2d 895, 897 n. 5 (5th Cir.1968) (where statute was "neither patently nor latently ambiguous ... there is no need to resort to *in pari materia* constructions").

Under the doctrine of *in pari materia*, the court is not restricted to "reading a single statute in isolation, but ... consider[s] other statutes dealing with the same subject matter." *United States v. Arciga-Bustamante*, 276 F. App'x 716, 721 (10th Cir. 2006) (citing *Planned Parenthood of Rocky Mountains v. Owens*, 287 F.3d 910, 923 n. 13 (10th Cir.2002)). The doctrine recognizes that "'[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.'" *Id.* (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). "It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls." *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir.1986) (citations omitted).

Even if the court were to apply the doctrine here, the plaintiff's argument is misplaced because § 6621(a)(1) and (c)(3) do not use the same terms (the former uses the general term "corporation," while only the latter references the term "C corporation") and do not deal with the same subject matter. Subsection (a)(1) explicitly sets the "Overpayment rate," while Subsection (c) provides a special rule in certain cases for large corporate *underpayments*.

Accordingly, whether considered in isolation or *in pari materia*, the court finds no

4

ambiguity in § 6621(a)(1). The interest rate set forth in the statute is applicable to an entity that is a "corporation," without regard to its profit or nonprofit status.

Under 26 U.S.C. § 7701(a)(3) the term "corporation" as used in the Internal Revenue Code "includes associations, joint-stock companies, and insurance companies." The Tenth Circuit has recognized that this provision "extends, rather than limits, the ordinary meaning thereof," and thus "includes 'associations, joint-stock companies, and insurance companies,' as well as entities organized as corporations." *United States v. Empey*, 406 F.2d 157, 166 (10th Cir. 1969). "[A] corporation created under state law is a corporation within the meaning of 26 U.S.C. § 7701(a)(3)." *O'Neill v. United States*, 410 F.2d 888, 899 (6th Cir. 1969). *See also Empey*, 406 F.2d at 169 (noting "the long followed administrative practice of treating a corporation organized and chartered under state law as a corporation for federal income tax purposes," which Congress "tacitly approved" by repeatedly reenacting § 7701(a)). The plaintiff is organized as a corporation under Kansas law, and is subject to the overpayment rate provisions of § 6621(a)(1).

Courts have previously addressed claims by nonprofit corporations that they should not be subjected to the lower corporate interest rate for tax overpayments authorized by Section 6621(a). In *Maimonides Medical Center v. United States*, 54 F.Supp.3d 194, 205 (E.D.N.Y. 2014), *aff'd*, 809 F.3d 85 (2nd Cir. 2015) the court held that the general definition of "corporation" in § 7701(a)(3) was applicable to § 6621(a)(1), "which ... means that income tax-exempt not-for-profit corporations like plaintiff are subject to § 6621(a)(1)'s corporate interest rate." Although the district court concluded that the plaintiff should be treated as a corporation in light of IRS regulations implementing § 7701, *see* 26 C.F.R. § 301.7701, the court also acknowledged precedent—including *O'Neill, supra*— that the language of the statute itself "*requires* all incorporated entities to be classified as 'corporations' for federal tax purposes." *Id.* at 201 (emphasis in original).

On appeal, the Second Circuit affirmed this conclusion, noting both the meaning of

the term "corporation" in ordinary usage, and in the context of the Code § 7701(a). As to the former, the court observed that "the word 'corporation,' standing alone, ordinarily refers to both for-profit and nonprofit entities without distinction." 809 F.3d at 87 (citing Webster's THIRD NEW INTERNATIONAL DICTIONARY 510 (1993) and OXFORD ENGLISH DICTIONARY (2d ed. online version 2015). The court also noted that in legal treatises, "[a] profit-seeking motive does not appear on the list of distinguishing characteristics of a corporation." *Id.* (citing 1 William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5).

Section 7701(a), which provides simply that the term corporation "includes" certain entities without providing any characteristics of the underlying term, was not a traditional definition.

> It does, however, serve to *expand* the federal tax law meaning of "corporation" beyond entities that would ordinarily fall under that term; it offers no hint that Congress intended to *contract* the ordinary meaning of the term in any way. The statutory definition thus strongly suggests that, at a minimum, all entities covered by the core definition of "corporation" are also included. Section 7701(a)(3) does not provide that core definition itself, but because the ordinary meaning of "corporation" includes nonprofit entities that take the corporate form, the same should be true of the core term as used in § 7701(a)(3). That core definition most plausibly encompasses any entity upon which state law has conferred the rights and duties characteristic of a "corporation" as defined in the sources quoted above.

*Id.* at 88. That Congress intended such an interpretation of the term "corporation" was also supported by other provisions in the Code. Thus, sections 501(a) & (c)(3) of the Code exempt from taxation "[c]orporations … organized and operated exclusively for … charitable … purposes." If the underlying term "corporation" was restricted to for-profit companies, these provisions "would be self-contradictory." *Id.* at 89.

The court also rejected various arguments made by the plaintiff that § 6621(a) should be construed so that the reduced interest rate provisions applied only to for-profit corporations, including an *in pari materia* construction argument based on § 6621(c).

> MMC complains that the government's reading of § 6621 fails to give the words "corporation" and "corporate" a consistent meaning throughout that section. But it is mistaken: the word "corporation," standing alone, has only one meaning throughout § 6621—namely, the meaning derived from §

7701(a)(3). It has the meaning "C corporation" only where it is preceded by the qualifier "C." By asking us to read "C" into subsection (a)(1), MMC seeks to have the rule of *in pari materia* (insofar as it applies at all) override another canon of interpretation, namely, the rule that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

*Id.* at 92-93.

The Sixth Circuit addressed the same issue in *United States v. Detroit Medical Center*, 833 F.3d 671, 675 (6th Cir. 2016), and agreed that "corporations," as traditionally understood, "includes nonprofit entities," and noted the "[m]any ... examples" appearing "throughout the Internal Revenue Code," which showed that Congress intended to incorporate that generic understanding of the term. *Id.* at 676. *See also id.* at 679 (acknowledging the "thoughtful opinion by Judge Lynch" in *Maimonides*).

This usage, the court found, "puts the Detroit Medical Center at the bottom of a steep hill when it comes to showing that the term 'corporation' in § 6621 of the Code refers only to for-profit corporations." *Id.* at 677. The court concluded that the plaintiff failed to show that, for § 6621(a), the term should receive a different construction. With respect to plaintiff's *in pari materia* argument, the court wrote:

> In English, the canon says that words dealing with the same matter in the same statute should be given the same meaning. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Center inverts the canon in invoking it here. It asks us to treat the same matters throughout the Internal Revenue Code differently and different matters within one section the same. It implores us to treat the use of the word "corporation" in § 6621(a)(1) differently from uses of the same word in other sections of the Internal Revenue Code, such as § 501(c)(3). And it implores us to treat the use of the generic word "corporation" in § 6621(a)(1) the same as the specific term "C corporation" in § 6621(c)(3). The canon in truth leads to the opposite conclusion: that the word "corporation," standing alone, and the word "corporation," preceded by the qualifier "C," should be given different meanings.

*Id.* at 678-79.

Finally, in *Medical Col. of Wisconsin Aff. Hosp. v. United States*, 854 F.3d 930 (7th Cir. 2017), the Seventh Circuit rejected a similar *in pari materia* construction argument, as

7

recognized in authorities such as Antonin Scalia & Bryan Garner, *Reading Law*, Canon 25 (2012). The court observed that, in its application to § 6621, there are "[a]t least two things ... wrong with this line of argument." *Id.* at 933. First, the doctrine in fact pointed in the *opposite* direction: "the distinction between 'corporation' in subsection (a) and 'C corporation' in subparagraph (c)(3)(A) implies a different meaning. A presumption that a single word means the same thing throughout a statute goes together with a presumption that different words mean different things." *Id.*

Second, any such *in pari materia* reading was precluded by other language in § 6621(c):

> [P]aragraph (c)(3) tells us how far its definitions extend. It begins "[f]or purposes of this subsection"—in other words, subsection (c), the only part of § 6621 in which "large corporate underpayment" plays a role. What Scalia and Garner call the presumption of consistent usage is just that: a presumption. It is overcome by other indicators, such as a provision that a definition covers just one subsection. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004), is among many decisions showing that the Justices take seriously the way statutory subdivisions refer to each other. Subsection (a) likewise tells us exactly how much of paragraph (c)(3) is borrowed: its definition of "taxable period". The rest of paragraph (c)(3) pertains to subsection (c) alone.

*Id.*

This court concurs with the reasoning in *Maimonides Medical Center*, *Detroit Medical Center*, and *Medical College of Wisconsin*, and concludes that not-for-profit corporations are subject to the reduced interest rate provisions of § 6621(a) applicable to all corporate tax overpayments.[1] Because the court reaches this conclusion based on the unambiguous statutory usage relating to "corporations" in the Code, including § 6621, the court need not address the potential application of the IRS check-the-box regulations. Similarly, the court

---

[1] The Seventh Circuit's decision in *Medical College of Wisconsin* is briefer than the earlier decisions, the court adding that "[t]o the extent we have skipped over any of Medical College's arguments, it is enough to say that we agree with our colleagues in the Second and Sixth Circuits." 854 F.3d at 933. This court agrees with Judge Easterbrook's conclusion, and finds that the reasoning in the three cited decisions requires denial of the various arguments advanced by WCGME.

need not address the government's alternative argument (Dkt. 38, at 14-17) that, even if the court agreed with plaintiff's *in pari materia* argument and concluded that the reduced interest rate of § 6621(a) only applied to C corporations, WCGME should still be considered a "corporation" for purposes of the statute.

Nor is this understanding of the language of §§ 7701(a)(3) and 6621(a) "manifestly incompatible with the intent of the Code," thereby precluding such a construction. *See* 26 U.S.C. § 7701(a). There is nothing in the legislative history of § 6621(a) which shows any intention to distinguish between types of corporations. Certainly, as plaintiff argues, not-for-profit corporations do important and valuable work in society. But such arguments are properly addressed to Congress, rather than the courts.

As the Sixth Circuit acknowledged in *Detroit Medical Center*,

> it is strange that Congress reduced the interest rate on overpayments for all corporations, whether for profit or not. We have considerable sympathy for the Medical Center on this score. Congress has created a regime in which a nonprofit hospital receives a lower interest rate on its FICA tax overpayments than Warren Buffett does on his individual tax returns. Perhaps Congress did not think about the point. Nonprofit corporations after all do not pay income tax, and most tax overpayment issues usually arise in the context of income taxes, as opposed to the automatic withdrawal regime associated with FICA taxes. And perhaps if Congress thinks about the point, it will alter the rule. But for now, we have a statute that by any conventional method of interpretation does not provide relief for the Detroit Medical Center.

833 F.3d at 671.

IT IS ACCORDINGLY ORDERED this 7th day of December, 2017, that the government's Motion for Summary Judgment (Dkt. 37) is granted; that of the plaintiff (Dkt. 40) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

9